## THE ANNIE WILLIAMS.

*(District Court, D. New Jersey. June 28, 1884.)*

1. COLLISION—TUG AND. TOW—RESPONSIBILITY OF THE TUG.
     Steam-tugs, having boats in tow, are bound to the exercise of reasonable skill and care in everything relating to their work until it is accomplished, and are chargeable for the want of either to the extent of the damage sustained; and this liability continues, although it may appear that the negligence or unskillfulness of those managing the tow contributed to the collision.

2. SAME—RESPONSIBILITY OF THE TOW.
     Whenever tow-lines are used, the master of the tow is bound to obey all proper orders of the master of the tug, and when he refuses to obey such orders, or fails in reasonable skill or attention to duty, such conduct may relieve the owners of the tug from responsibilty.

3. SAME—APPLICATION TO FACTS.
     A tug having a schooner in tow, attached by a long hawser, in attempting to pass a boat in tow, sheered upon the latter the schooner, and caused much damage to the boat. In such a case, the tug being the motive power, the law regards her as the dominant mind in the transaction, and makes her responsible for all accidents resulting from not exercising ordinary care.

In Admiralty. Libel *in rem*.

*Beebe, Wilcox & Hobbs,* for libelants.

*Alward & Parrot,* for claimants.

NIXON, J. The libel is filed in this case to recover damages caused by a collision. It alleges that on the fifteenth of November, 1882, the libelants' boat Mary, loaded with a cargo of coal, was taken in tow by the steam-tug Robert Burnett at Elizabethport, New Jersey, to be towed with three other boats to the city of New York; that the tow was made up with two boats on each side of the said tug, fastened thereto, the libelants' boat being on the outside of the port side of the tug; that they left Elizabethport between 7 and 8 o'clock in the morning and proceeded on said trip; that after they left Elizabethport the tug Annie Williams took a schooner in tow astern, by a long hawser, and proceeded after said tow, and following them; that when said tug and tow were about abreast of Mariners' Harbor, Staten island, and where there is a turn in the channel, the tug Annie Williams, with the said schooner in tow, attempted to pass the Robert Burnett and her tow between libelants' boat and the New Jersey shore; that in so doing the steam-tug Annie Williams caused the schooner to take a rank sheer, and while on said sheer the schooner came in' contact with libelants' boat, striking her on the port quarter, starting

the cabin and deck, breaking the timbers and rails, and doing other serious damage. It further alleges that the collision was owing solely to the negligence and carelessness of those in command, and controlling and managing, the steam-tug Annie Williams. The answer of the claimant sets up two grounds of defense, giving his version of the transaction as follows: That the steam-tug Annie Williams, with the schooner Impudence in tow astern by a hawser about 120 feet long, proceeded after the tow in which the libelants' boat was made up; that the tug was used by the schooner as her propelling power,—the schooner being all the time in charge of her own officers and crew, and steered by them, and her immediate course in the channel directed by them, and not by the steam-tug; that the tide was running from Elizabethport towards the corner-stake light, and in the direction the vessels were moving; that while the vessels were in the waters of Staten Island sound, and the Annie Williams was proceeding on her course, the Robert Burnett suddenly stopped with all her tow, compelling the Annie Williams to pass her, which she did, on the port side, about 500 feet south-west of, and before coming to, the corner-stake light; that, in passing, the starboard side of the Annie Williams was full 40 feet from the port side of the libelants' boat; that if the schooner in tow rubbed against the libelants' boat as alleged in the libel, it did not start the cabin or deck, or break her timbers, or do any damage; and that the schooner during the whole time was astern of the tug and under the control of her commander, who was standing at her wheel, steering the course of the said schooner, and if he had followed in a straight line in the wake of the Annie Williams the schooner would have passed the tow without colliding or touching; and that the pretended collision was not occasioned by the negligence or carelessness of those having charge of the Annie Williams, but by the conduct of those in charge of the libelants' tow and schooner, and by circumstances beyond the power of the said Annie Williams, and those controlling her, to prevent.

The only interpretation to be put upon the answer is that, inasmuch as the schooner in tow of the Annie Williams was manned by and was under the control of her own crew, the schooner alone is answerable for all damages arising from a collision; and, *secondly*, that if any collision occurred no injury in fact resulted therefrom. The last question is not properly before the court, but must be considered hereafter, on a reference to ascertain the damages, if a reference is ordered. With regard to the first, the proposition is not true, without qualification. Steam-tugs having boats in tow are not liable as common carriers; nor are they insurers. They are, nevertheless, bound to the exercise of reasonable skill and care in everything relating to the work until it is accomplished, and are chargeable for the want of either to the extent of the damage sustained. And this liability continues, although it may appear that the negligence or unskillfulness of those managing the tow contributed to the collision.

They may be both in fault, and in such cases are accountable to an innocent suffering party, either jointly or severally, as such party may determine.

The relative duties of the tug and tow were fully discussed by the late Justice CLIFFORD in the case of *The Express*, 3 Cliff. 462, and it was there determined that where a vessel was drawn by a hawser, both vessels had duties to perform, and that both might be held in fault in case of an accident; that when tow-lines were used, the master of the tow was bound to obey all proper orders of the master of the tug; and that where he refuses to obey such orders, or fails in reasonable skill and attention to his duty, such conduct might relieve the owners of the tug from responsibility. But, however culpable the conduct of the tow may be, the owner of the tug cannot claim such release from responsibility in any case where he also was in fault, and it is now well settled that where both tug and tow contribute to the accident by lack of skill or care, the injured party may maintain his suit and recover his damages against one of the offending parties.

Thus, in *The New Philadelphia*, 1 Black, 76, the supreme court held as a rule of law in the admiralty, as at the common law,—

"That when a third party has sustained an injury to his property from the co-operating consequence of two causes, though the persons producing them may not be in intentional concert to occasion such a result, the injured person is entitled to compensation for his loss from either one or both of them, according to the circumstances of the accident, and particularly so from the one of the two who had undertaken to convey the property with care and skill to a place of destination, and there shall have been in so doing a deficiency in either."

To the same effect, and as illustrating the same principle, is the decision of the supreme court in *The Atlas*, 93 U. S. 319, where it is said:

"Parties without fault * * * bear no part of the loss in collision suits, and are entitled to full compensation for the damage which they suffer from the wrong-doers, and they may pursue their remedy *in personam*, either at the common law or in admiralty, against the wrong-doers, or any one or more of them, whether they elect to proceed at law or in the admiralty courts."

The question then is, do the facts of this case show a want of reasonable care and skill on the part of the respondents' tug, having the schooner in tow? She was the following vessel, and was undertaking to pass the tow to which the libelants' boat was attached, on the port side of the channel. Being the motive power, the law regarded her as the dominant mind in the transaction, and made her responsible for all accidents resulting from not exercising ordinary care. It is impossible to ascertain from the conflicting testimony the width of the channel at the point of passing. About 200 feet is the average of the evidence upon the subject. A mud-digger with a scow on her starboard side, anchored in the channel on the New Jersey side, made the attempt to pass more difficult and hazardous. The weight of the

proof does not sustain the allegation of the answer, that the Robert Burnett suddenly stopped, which rendered it necessary that the Annie Williams should go ahead. There seems to have been no slacking of speed by her until after the collision. Without dwelling at length upon the testimony, I am clearly of the opinion that the Annie Williams must be held responsible for want of care. No attempt should have been made to pass, with the mud-digger and scow on her port, and a tow nearly a hundred feet wide on her starboard side, where the whole channel was about 200 feet in width, having a deeply-laden schooner in tow with a hawser, sheering wildly, and not controllable by her rudder. He also added to the violence of the concussion by ringing extra bells for the engineer to work up, hoping to break the sheer by increasing the speed. The distance between the vessels was too short to accomplish any such result. The master of the Williams states, in his examination, that noticing the sheer of the schooner he rang to the engineer to throw the boat wide open, so as to pull the schooner off her sheer.

There must be a decree in favor of the libelants, with costs, and a reference to ascertain the amount of the damages, unless the parties will agree that the commissioner may report the amount from the evidence already taken.